UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NETJETS AVIATION, INC. and NETJETS
SALES, INC.,

        Plaintiffs,

vs.                                Case No.  3:10-cv-483-J-32MCR

PETER SLEIMAN DEVELOPMENT GROUP,
LLC, PETER SLEIMAN, and JENNIFER
WARD,

        Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendants, Peter Sleiman Development

Group, LLC and Peter Sleiman's Motion to Dismiss Counts One and Five of the Second

Amended Complaint (Doc. 67) filed April 22, 2011.  Plaintiffs, NetJets Aviation, Inc. and

NetJets Sales, Inc., have filed a response in opposition to this Motion (Doc. 69).

Additionally, on May 24, 2011, the undersigned heard oral argument on the Motion.

Accordingly, the matter is now ripe for judicial review.

## I.  PROCEDURAL BACKGROUND

Back in June 2010, Plaintiffs filed the Complaint in this case against Defendants,

Peter Sleiman Development Group, LLC ("PSDG") and Peter Sleiman ("Sleiman")

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14)
DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from
a de novo determination by a district judge of an issue covered herein and from attacking factual
findings on appeal.  See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a),
United States District Court for the Middle District of Florida.

alleging alter ego liability for breach of contract and breach of contract implied-in-fact against PSDG related to the purchase and lease of fractional ownership interests in jet aircrafts by J.Ward, Inc. ("J.Ward").  (Doc. 1).  Additionally, Plaintiffs asserted claims of quasi-contract and unjust enrichment against both Defendants for private jet travel and related services provided to and received by both Defendants.  Id.  In response, PSDG and Sleiman filed a Motion to Dismiss (Doc. 10) arguing that the alter ego claim was deficient because it did not allege that either Defendant had any ownership interest in J.Ward.  Additionally, Defendants asked the Court to dismiss the remaining equitable claims because they could not survive where an express contract existed which covered the same subject matter.

Judge Toomey entered a Report and Recommendation (Doc. 24) denying the Motion to Dismiss.  Judge Toomey determined the alter ego claim should not be dismissed for failure to allege an ownership connection between J.Ward and PSDG and noted Defendants had not cited and the Court had not found any Florida cases "stating an absolute requirement that there be an ownership connection between the shell entity and the target entity or individual."  (Doc. 24, pp. 2-3).  Moreover, Judge Toomey stated:

> Although in most situations if a corporation were to be formed or used to accomplish an illegal act, it would be done by the shareholders, that might not always be the case. There appears to be no logical reason to limit the doctrine to owners when a non-owner controls the shell entity for its benefit and participates in improper conduct, as is alleged in the Complaint.

(Doc. 24, p.3).  Judge Toomey also denied the Motion with respect to the equitable claims, noting that the Court had not yet made a determination whether an express contract existed between the parties.  (Doc. 24, p.6).

On October 25, 2010, Judge Corrigan adopted the Report and Recommendation (Doc. 25) and directed Defendants to file an answer to the Complaint.  Defendants did so and on November 22, 2010, Plaintiffs filed a motion to amend the Complaint to add claims for quasi-contract and unjust enrichment against Jennifer Ward, the sole shareholder of J.Ward.  (Doc. 27).  The Court granted the motion (Doc. 31) and Plaintiffs filed the Amended Complaint (Doc. 32) on December 13, 2010.  Defendants filed answers (Docs. 33 and 42) to the Amended Complaint on December 29, 2010 and February 16, 2011.

On February 11, 2011, Defendants PSDG and Sleiman filed a motion for protective order (Doc. 41) seeking an Order protecting them from financial discovery "prior to any Court determination that a reasonable evidentiary basis exists that Peter Sleiman and PSDG are the alter-egos of [J.Ward, Inc.]."  (Doc. 41, p.10).  The Court took the Motion under advisement and asked the parties to file legal memoranda "addressing the impact of the recent Eleventh Circuit case Molinos Valle Del Cibao v. Lama, 2011 WL 651996 (11th Cir. Feb. 24, 2011) on the issues raised in the Motion and on the case in general."  (Doc. 47, p.2).

On March 21, 2011, Plaintiffs filed a second motion seeking leave to file a second amended complaint.  (Doc. 54).  This time, Plaintiffs sought to add claims for alter ego liability for breach of contract against Sleiman and Jennifer Ward.  Defendants

opposed the amendment on the basis that it would be futile as there were no facts to support alter ego liability against either PSDG or Sleiman in light of the <u>Molinos</u> decision.  The Court recognized "the serious issue regarding the viability of the alter ego counts against non-shareholders as a result of <u>Molinos</u>," however, allowed Plaintiffs to file the Second Amended Complaint and observed that Defendants would be permitted to "respond to the second amended complaint by motions to dismiss and address the impact of <u>Molinos</u> . . ."  (Doc. 62, pp. 2-3).  Thereafter, on April 21, 2011, Judge Toomey recused himself and the undersigned was reassigned as the Magistrate for the case.  Further, on April 22, 2011, Defendants, PSDG and Sleiman, filed the instant Motion to Dismiss Counts One and Five of the Second Amended Complaint (Doc. 67) and on May 12, 2011, Judge Corrigan referred the matter to the undersigned for entry of a report and recommendation (Doc. 72).

## II.  BACKGROUND FACTS

Taking the facts in the Second Amended Complaint as true, the following is a brief factual background for this case.  Plaintiffs operate a fractional ownership program which allows multiple individuals or entities to co-own or co-lease aircraft.  Under the program, the co-owners or co-lessees are allotted use of the aircraft for a specified number of hours per year at a contracted-for price.  According to the Second Amended Complaint, on June 20, 2006, J.Ward purchased a 6.25 percent interest in a Dassault Aviation Falcon 2000 aircraft and entered into numerous written agreements with Plaintiffs.  However, J.Ward failed to pay for fees, services, and flight activity during the months of December 2006 through May 2007.  Additionally, on March 28, 2007, J.Ward

leased a 12.5 percent interest in a Cessna 750 aircraft and again entered into numerous

written agreements with Plaintiffs.  J.Ward failed to make any payments for the lease of

the Cessna aircraft.  On September 25, 2007, Plaintiffs filed a lawsuit against J.Ward in

Ohio state court.  Plaintiffs received a judgment against J.Ward in the amount of

$1,500,411.46, plus post-judgment interest at the rate of twelve percent per annum on

December 12, 2007.

On January 29, 2008, Plaintiffs filed and recorded the Ohio judgment in Florida

and began conducting post-judgment discovery in an effort to collect the judgment.  In

conducting this discovery, Plaintiffs took the deposition of Jennifer Ward, the sole

shareholder of J.Ward and claimed they learned that:

> J.Ward was the mere instrumentality and alter ego of PSDG,
> Peter Sleiman, and Jennifer Ward.  Defendants dominated
> and controlled the actions of J.Ward and improperly used
> J.Ward to their own benefit. [Plaintiffs] also discovered that
> PSDG, Peter Sleiman, and Jennifer Ward had unjustly
> received the benefits of [Plaintiffs'] private jet aircraft and
> services without payment.

(Doc. 63, ¶32).  Specifically, Plaintiffs allege Ms. Ward ran J.Ward for the benefit of

PSDG and Sleiman and that J.Ward did not have any employees, but rather, PSDG

employees reported to Ms. Ward.  PSDG provided telephone service, email service,

computers, office furniture, and office space for J.Ward.  J.Ward only did business with

PSDG and some carryover work from Sleiman Enterprises.  Plaintiffs further contend

Sleiman gave over two million dollars to J.Ward without any loan agreement.

Additionally, Plaintiffs allege Ms. Ward and Sleiman commingled funds with J.Ward and

used J.Ward funds to: make payments to various casinos in Las Vegas, pay Ms. Ward's

personal physician, pay Ms. Ward's mortgage, pay various retail stores, and pay Ms. Ward's parents $500,000.  Finally, Plaintiffs contend Ms. Ward and Sleiman used the private jet aircraft provided by Plaintiffs for personal travel and to conduct business for PSDG.

### III.  ANALYSIS

Defendants seek to dismiss Counts One and Five of Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  Counts One and Five of the Second Amended Complaint allege alter ego liability for breach of contract against PSDG and Sleiman respectively.  (Doc. 63).

### A.    Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007).  Moreover, the Court must limit its consideration to the complaint and the written instruments attached to it as exhibits. Rule 12(d), Fed.R.Civ.P.; GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993).

To withstand a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007).  To

determine whether a plaintiff has accomplished this, the Court engages in a two-step approach: "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009).

**B.**   **Piercing the Corporate Veil**

In the instant case, Defendants argue Plaintiffs cannot pierce the corporate veil to state breach of contract claims based on alter ego liability against either PSDG or Sleiman because Plaintiffs have not alleged and cannot show PSDG or Sleiman had any ownership interest in J.Ward.  Additionally, with respect to Sleiman, Defendants argue Plaintiffs have not made a sufficient showing of improper conduct.

In order to state a claim for alter ego liability or to pierce the corporate veil, a plaintiff must allege three elements:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

Molinos, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting Gasparini v. Pordomingo, 972 So.2d 1053, 1055 (Fla. 3rd DCA 2008) (citations omitted)).  In the present case, Defendants take issue with Plaintiffs' showing of the first and second elements.  The Court will address Defendants' arguments regarding these elements separately.

1.    <u>**Alter Ego**</u>

With respect to the first element, Defendants allege Plaintiffs have failed to show that either PSDG or Sleiman were shareholders of J.Ward as the Second Amended Complaint clearly alleges Ms. Ward was the sole shareholder.  Accordingly, Defendants argue they cannot be considered the alter ego of J.Ward because being a shareholder is a prerequisite.  To support this argument, Defendants cite the Eleventh Circuit's <u>Molinos</u> decision.

The <u>Molinos</u> case stemmed from an agreement between the plaintiff, a foreign corporation, and the defendants, three individuals, whereby the defendants agreed to exchange twenty-eight million pesos for $636,596.00.  <u>Molinos</u>, 633 F.3d at 1335.  The plaintiff produced the pesos and the defendants issued several checks totaling $636,596.00, however, the checks were not from the individual defendants.  <u>Id.</u> at 1336.  Instead, the checks were drawn from the accounts of two corporations and signed by two of the defendants in their capacities as directors of the corporations.  <u>Id.</u>  Unfortunately, the checks bounced and the plaintiff did not receive its money.  <u>Id.</u> at 1337.  The plaintiff brought suit against the defendants and alleged in one count that the individual defendants should be liable for the worthless checks issued by the two corporations on an alter ego theory.  <u>Id.</u> at 1338.  The district court dismissed the worthless check claim and the plaintiff appealed that dismissal.  The plaintiff conceded the defendants were not shareholders of the two corporations, but alleged the defendants controlled the corporations "by virtue of their positions on the board of

directors." Id. at 1348.  The defendants argued they could not be the alter egos of the corporations as a matter of law because they were not shareholders.

The Eleventh Circuit noted the Florida Supreme Court had not addressed this issue and predicted it would agree with the defendants. The court concluded that Florida law "does not permit a plaintiff to pierce the corporate veil against a non-shareholder director." Id. at 1351.  In the instant case, Defendants argue this holding requires the alter ego claims against them to be dismissed as neither PSDG nor Sleiman are shareholders of J.Ward.  The Court does not agree.  The holding in Molinos cannot be interpreted as broadly as Defendants contend.

As an initial matter, the undersigned notes that in reaching its decision, the Molinos court observed that there were Florida District Courts of Appeal which had permitted piercing the corporate veil against a non-shareholder. Molinos, 633 F.3d at 1350.  Specifically, the Molinos court discussed the cases of Walton v. Tomax Corp., 632 So.2d 178 (Fla. 5th DCA 1994) and Bermil Corp. v. Sawyer, 353 So.2d 579 (Fla. 3rd DCA 1978) in which the Florida courts allowed piercing the corporate veil against a non-shareholder.  Id.  In both cases, the non-shareholder defendant was married to the sole shareholder of the corporation.  The Eleventh Circuit felt this fact would be dispositive to the Florida Supreme Court and noted:

> The Florida Supreme Court would likely find [the fact that the
> sole shareholder in the case was the defendant's wife]
> dispositive; a wife's ownership is a very close analogue to
> the husband's ownership because the economic proceeds
> likely benefit the entire family unit.

Id. The court pointed out that in Molinos, the sole shareholder was another corporation, which it felt was "nothing like a spouse."  Id.  In the instant case, Plaintiffs allege Ms. Ward and Sleiman were living together in 2007.  (Doc. 63, ¶35).  As such, Plaintiffs take the position that as pointed out by the Molinos court, the Florida Supreme Court would not deny an alter ego claim against Sleiman simply because he was not a shareholder.

The Court agrees with Plaintiff that simply because Sleiman is not a shareholder of J.Ward is not enough, on its own, to dismiss the alter ego claim against him.  As Molinos acknowledges, Florida courts will overlook the fact that an individual is not a shareholder if the individual is married to the sole shareholder.  See Walton, 632 So.2d 178; Bermil Corp., 353 So.2d 579; In re Charnock, 97 B.R. 619 (M.D. Fla. 1989).  While Sleiman and Ms. Ward were not married, the Second Amended Complaint alleges they were living together.  (Doc. 63, ¶35).  The undersigned believes this fact would compel the Florida Supreme Court to overlook the fact that Sleiman himself is not a shareholder as Ms. Ward's "ownership is a very close analogue to [Sleiman's] ownership because the economic proceeds likely benefit" them as a couple.  Molinos, 633 F.3d at 1350. Therefore, the fact that Sleiman was not personally a shareholder does not defeat the claim.  Instead, Plaintiffs need only plead facts showing Sleiman "took action to confuse his personal affairs with [J.Ward's] affairs."  North American Clearing, Inc. v. Brokerage Computer Systems, Inc., No. 6:08-cv-1567, 2009 WL 2982834, *5 (M.D. Fla. Sept. 11, 2009).  Defendants have not argued Plaintiffs failed to make such a showing and a review of the Second Amended Complaint indicates they have.  Accordingly, the

undersigned finds Plaintiffs have satisfactorily alleged sufficient facts to support the first

element of a piercing the corporate veil claim with respect to Defendant Sleiman.

As for PSDG, Plaintiffs similarly argue that Molinos does not require a finding that

PSDG was not the alter ego of J.Ward.  Plaintiffs take the position that the holding in

Molinos was specific to the facts of that case and point out that the facts in Molinos are

distinguishable from the instant case.  Specifically, Plaintiffs note that in Molinos, the

plaintiff did not make any showing of improper conduct or any sort of domination or

control of the corporation by the defendants.  Rather, the plaintiff argued the defendants

should be liable solely based on their being directors of the corporation.  The Court

agrees that the facts of Molinos are distinguishable.  In the instant case, unlike in the

Molinos case, Plaintiffs have provided much factual support for their allegations that

J.Ward was dominated and controlled by PSDG.  Moreover, as noted above, the

undersigned does not believe Molinos stands for the proposition that in every case

seeking to pierce the corporate veil, the defendant sought to be held liable must be a

shareholder.  Instead, its holding that Florida law "does not permit a plaintiff to pierce

the corporate veil against a non-shareholder director," Molinos, 633 F.3d at 1351, is

limited to cases with similar facts: where the only evidence of domination and control by

the defendant is that the defendant is a director of the corporation.

After conducting its own independent research, the Court finds this interpretation

of Molinos is supported by Florida caselaw.  As previously stated, in order to pierce the

corporate veil in Florida, a plaintiff must show both that the individual or corporation

sought to be held liable so controlled the corporation sought to be pierced that it was no

longer an independent entity, but instead, a mere instrumentality or alter ego of the

individual or other corporation.  To determine whether the corporation was so

dominated and controlled that it was no longer independent, courts have looked at

several factors, such as whether:

> (1) **the parent corporation owns all or majority of the
> capital stock of the subsidiary**; (2) the parent and
> subsidiary corporations have common directors or officers;
> (3) the parent corporation finances the subsidiary; (4) the
> parent corporation subscribes to all the capital stock of the
> subsidiary or otherwise causes its incorporation; (5) the
> subsidiary has grossly inadequate capital; (6) the parent
> corporation pays the salaries or expenses or losses of the
> subsidiary; (7) the subsidiary has substantially no business
> except with the parent corporation or no assets except those
> conveyed to it by the parent corporation; (8) in the papers of
> the parent corporation, and in the statements of its officers,
> "the subsidiary" is referred to as such or as a department or
> division; (9) the directors or executives of the subsidiary do
> not act independently in the interest of the subsidiary but
> take direction from the parent corporation; and (10) the
> formal legal requirements of the subsidiary as a separate
> and independent corporation are not observed.

Dania Jai-Alai Palace, Inc. v. Sykes, 425 So.2d 594, 599 (Fla. 4th DCA 1982) (emphasis

added), *approved in part and quashed in part by* Dania Jai-Alai Palace, Inc. v. Sykes,

450 So.2d 1114, 1120 (Fla. 1984).  Clearly, if stock ownership is only one of the factors

to be considered in determining whether the corporation sought to be pierced is the alter

ego of another individual or company, it cannot be a prerequisite as Defendants

contend.[2]

---

[2]  The Court recognizes the Florida court of appeals decision in Dania was quashed by the
Florida Supreme Court, however, the Supreme Court simply quashed to portion of the decision
finding it was not necessary to show improper conduct before piercing the corporate veil.  The

(continued...)

This notion is further supported by the Fifth Circuit's decision in <u>Krivo Indus.</u>

<u>Supply Co. v. National Distillers & Chemical Corp.</u>, 483 F.2d 1098, 1104 (5th Cir. 1973)[3]

in which the court discussed piercing the corporate veil.  The court noted that one

element in piercing the corporate veil was the extent to which the corporation sought to

be pierced was controlled by the individual or corporation sought to be held liable.  The

court observed:

> In considering the first element, that of control, the courts
> have struggled to delineate the kind of control necessary to
> establish liability under the "instrumentality" rule.  Two
> problem areas have persistently troubled the process of
> ascertaining the extent of control.  First, to what extent is
> stock ownership critical, and second, how much weight
> should be given to the existence of a creditor-debtor
> relationship in those cases where the debtor corporation is
> alleged to be the "instrumentality" of its creditor?

<u>Krivo Indus. Supply Co.</u>, 483 F.2d at 1104.  In discussing stock ownership, the court

went on to state: "the fact that the allegedly dominant corporation held an ownership

interest in another, allegedly subservient, corporation does not, *per se*, resolve the

question of control" and likewise, "the fact that the allegedly dominant corporation held

*no* stock ownership interest in the allegedly subservient corporation has not precluded

---

[2](...continued)
Supreme Court determined that in addition to showing mere instrumentality or alter ego, it must also be shown that the corporation to be pierced was created or used to mislead creditors or work a fraud upon them.  <u>Dania</u>, 450 So.2d. at 1120; <u>see</u> <u>also</u> <u>Symons Corp. v. Tartan-Lavers Delray Beach, Inc.</u>, 456 So.2d 1254, 1265 (Fla. 4th DCA 1984) (observing that after Florida Supreme Court's decision in <u>Dania</u>, it is now "necessary to prove domination plus improper conduct.").

[3]  The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.  <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

application of the 'instrumentality' rule where actual and total control has been otherwise established." Id. (emphasis in original).  While the Krivo court was analyzing Alabama law, the rationale is still persuasive as Florida law similarly requires a demonstration of control in order to show the first element of the piercing the corporate veil test.

Finally, and even more compelling, is the case of Barineau v. Barineau, 662 So.2d 1008, 1009 (Fla. 1st DCA 1995) in which the court held that non-profit corporations are not exempt from piercing the corporate veil.  In so holding, the court stated:

> The mere fact that the corporation involved is a nonprofit corporation does not by itself preclude a court from applying the equitable remedy of piercing the corporate veil. The equitable character of the remedy permits a court to look to the substance of the organization, and its decision is not controlled by the statutory framework under which the corporation was formed and operated.  While it may appear to be impossible for a person to exercise ownership control over a nonstock, not-for-profit corporation, a person can be held personally liable under the alter ego theory if the evidence shows that the person controlling the corporation did in fact exercise control, **even though there was no stock ownership**.

Id. (emphasis added) citing 1 Fletcher Cyclopedia of Corporation Law § 41.75 (footnotes omitted).  Clearly, the focus in piercing the corporate veil cases is on control, as Plaintiffs contend, rather than ownership as Defendants argue.  Here, Plaintiffs have made sufficient allegations that Defendants Sleiman and PSDG exercised enough control to satisfy the pleading requirements for the first prong of piercing the corporate veil and the Court will not dismiss Counts I or V on the grounds that Plaintiffs failed to allege either Sleiman or PSDG are shareholders of J.Ward.

## 2.   __Improper conduct__

As for the second element required to pierce the corporate veil, whether the

corporate form was used fraudulently or for an improper purpose, Defendants argue

Plaintiffs have failed to show any improper conduct on the part of Sleiman.

Under Florida law, the corporate veil will be pierced "'in only the most

extraordinary cases' and only where there is 'proof of deliberate misuse of the corporate

form-tantamount to fraud. . .'"  Old West Annuity and Life Ins. Co. v. Apollo Group, No.

5:03-cv-354, 2008 WL 2993958, *7 (M.D. Fla. Aug.1, 2008) (quoting Hillsborough

Holdings Corp. v. Celotex Corp., 166 B.R. 461, 468 (M.D. Fla. 1994)).  The Florida

Supreme Court has not provided any definition of "improper conduct."  Indeed, the

seminal case on improper conduct in Florida, Dania Jai-Alai Palace, Inc. v. Sykes, did

not give any formula or list of factors for courts to consider in determining whether

improper conduct has occurred.  Instead, the court stated:

> [t]he corporate veil will not be penetrated either at law or in
> equity unless it is shown that the corporation was organized
> or employed to mislead creditors or to work a fraud upon
> them.

Dania, 450 So.2d at 1120 (quoting Advertects, Inc. v. Sawyer Industries, 84 So.2d 21,

23-24 (Fla. 1955)).  Florida courts interpreting Dania have focused on this language and

require some claim that the defendant created or used the corporation to mislead or

work a fraud upon creditors.  See e.g. U-Haul Intern., Inc. v. Jartran, Inc., 793 F.2d

1034, 1043 (9th Cir. 1986) (interpreting Florida law and noting "[Dania] makes clear that

a necessary predicate for an alter ego finding is fraudulent or misleading conduct

directed at creditors"); Solomon v. Betras Plastics, Inc., 550 So.2d 1182, 1184 (Fla. 5th

DCA 1989) (holding "[i]mproper conduct, at least in the contract sense, means the organization or use of a corporation to mislead creditors or to perpetrate a fraud upon them"); Resolution Trust Corp. v. Latham & Watkins, 909 F.Supp. 923, 931 (S.D.N.Y. 1995) (analyzing Florida law) ("Absent proof of intentionally fraudulent conduct, courts simply do not pierce the corporate veil under Florida law.").

In the instant case, the Second Amended Complaint contains allegations that Sleiman gave money to J.Ward without any loan arrangements or agreements (Doc. 63, ¶39) and commingled corporate property and funds with his own funds (Doc. 63, ¶41).[4] Further there are allegations that Sleiman used corporate property (the private jets) for his own personal travel.  (Doc. 63, ¶46).  These claims are not enough to show improper conduct.  See e.g. Barkett v. Hardy, 571 So.2d 13, 14 (Fla. 2nd DCA 1990) (fact that corporate formalities were not observed, that corporation was a vehicle for the personal interests of the shareholder, that it lacked equity capital, and that its affairs were dominated by another did not constitute improper conduct for purposes of piercing the corporate veil);  Hillsborough Holdings Corp., 166 B.R. at 469-71 (collecting multiple cases for the proposition that improper conduct must be "deliberate misconduct;" thus, "absence of corporate formalities, lack of equity capital, proof of domination and control, and [evidence] that the corporation was used as a vehicle for personal interest were insufficient to establish improper conduct" because "negligence or even reckless

---

[4] The Second Amended Complaint also contains numerous allegations that J.Ward's funds were used for non-corporate, personal expenses, however, those allegations do not specifically indicate Sleiman used J.Ward funds for his personal expenses.  Instead, they allege Ms. Ward did so.  (Doc. 63, ¶41).

conduct" is insufficient under Florida law); Hilton Oil Transport v. Oil Transport Co., 659

So.2d 1141 (Fla. 3rd DCA 1995) (refusing to pierce corporate veil where stockholders

failed to observe formalities with respect to various informal loans and repayments);

Mason v. E. Speer & Associates, Inc., 846 So.2d 529, 534 (Fla. 4th DCA 2003)

(although court found "there [was] sufficient evidence that [defendant] improperly

converted corporate property to his own use on more than one occasion," it

nevertheless held that "[plaintiff] simply did not carry his burden in establishing that

these transactions were made with a deliberate intent to mislead creditors");

Robertson-Ceco Corp. v. Cornelius, No. 3:03-cv-475, 2007 WL 1020326, *7 (N.D. Fla.

Mar. 30, 2007) (noting under Florida law, failing to recognize corporate formalities and

commingling of funds is not enough to establish improper conduct "unless it is proven

that such actions were undertaken specifically for an improper purpose").

     Finally, Plaintiffs also allege Sleiman and PSDG "improperly used J.Ward to

execute contracts with [Plaintiffs] in an effort to receive access to and use private jet

aircraft without being contractually liable for the services they received."  (Doc. 63, ¶48).

Once again, this is not sufficient improper conduct to pierce the corporate veil.  See

Geigo Properties, L.L.P. v. R.J. Gators Real Estate Group, Inc., 849 So.2d 1109, 1111

(Fla. 4th DCA 2003) (holding "use of a shell corporation to enter into the lease, and the

subsequent breach of the lease by failing to pay rent, did not constitute the type of

improper conduct necessary to pierce the corporate veil.").

     Instead, to make a showing of improper purpose, the Second Amended

Complaint must contain allegations that Sleiman used J.Ward to mislead or work a

fraud upon Plaintiffs.  The closest such allegation is contained in paragraph 47, which claims that "PSDG, Peter Sleiman and Jennifer Ward's use of J.Ward to execute contracts for services they utilized misled [Plaintiffs] as to whom the real party-in-interest was for the services provided by [Plaintiffs]."  Again, this is not sufficient.  The case of 111 Properties, Inc. v. Lassiter, 605 So.2d 123 (Fla. 4th DCA 1992) is on point. In 111 Properties, an individual formed a corporation to purchase a parcel of real property because he knew the owner of the property disliked him and would not knowingly sell to him.  Id. at 124.  The plaintiff sought to hold the individual liable on an alter ego theory.  The court agreed with the plaintiff that the individual's conduct was a "subterfuge" to conceal his identity, but held that such was "not an example of the kind of conduct the supreme court in Dania Jai-Alai Palace describes as sufficient to pierce the corporate veil."  Id. at 126.

Similarly, the claim that Defendants used J.Ward to mislead Plaintiffs as to who would be using the jets is not sufficient to constitute improper conduct requiring piercing J.Ward's corporate veil.  Accordingly, the undersigned believes Defendants' request to dismiss Count Five, the alter ego breach of contract claim against Sleiman, should be granted as the Second Amended Complaint does not sufficiently allege improper conduct by Defendant Sleiman.  Similarly, the Court notes the only allegations of improper conduct by PSDG are contained in paragraphs 47 and 48 and as the undersigned finds them to be insufficient, the Court believes it is also appropriate to dismiss Count One for alter ego breach of contract against PSDG.

Accordingly, after due consideration, it is respectfully

**RECOMMENDED**:

Defendants, Peter Sleiman Development Group, LLC and Peter Sleiman's

Motion to Dismiss Counts One and Five of the Second Amended Complaint (Doc. 67)

be **GRANTED** and the Second Amended Complaint be dismissed without prejudice.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this __13th__ day of

June, 2011.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Timothy J. Corrigan,
   United States District Judge

Counsel of Record