UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NETJETS AVIATION, INC. and NETJETS
SALES, INC.,

    Plaintiffs,

vs.                                                                        Case No. 3:10-cv-483-J-32MCR

PETER SLEIMAN DEVELOPMENT GROUP,
LLC, PETER SLEIMAN, and JENNIFER
WARD,

    Defendants.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendants', Peter Sleiman Development Group ("PSDG") and Peter Sleiman ("Sleiman"), Renewed Motion for Protective Order or in the alternative, to Quash Subpoenas (Doc. 92) filed October 19, 2011. Plaintiffs filed their response to the motion on November 7, 2011 (Doc. 96). Accordingly, the motion is now ripe for judicial review.

## I. BACKGROUND

The instant litigation stems from contracts entered into between Plaintiffs and a Florida corporation, J.Ward. When J.Ward breached the contracts by failing to pay monies owed, Plaintiffs sued J.Ward in Ohio state court and obtained a judgment against it. Plaintiffs were unable to collect on the judgment and subsequently brought the instant litigation alleging breach of contract, implied contract-in-fact, and unjust enrichment based on alter ego liability against Defendants PSDG, Sleiman, and Jennifer

-1-

Ward ("Ward"). On April 22, 2011, PSDG and Sleiman moved to dismiss Counts One and Five of the Second Amended Complaint, which alleged alter ego liability for breach of contract. (Doc. 67). Judge Corrigan referred the motion to the undersigned and on June 13, 2011, the undersigned issued a Report and Recommendation (Doc. 75) that the Motion be granted without prejudice. However, upon the objections of both sides, Judge Corrigan denied the Motion to Dismiss in an Order dated September 27, 2011. (Doc. 88). In that Order, Judge Corrigan determined that at the pleadings stage, Plaintiffs' alter ego allegations regarding whether J.Ward was used fraudulently or for an improper purpose were sufficient and that "further discovery [would] provide the proper record upon which to determine whether NetJets [could] ultimately make the required showing necessary to sustain [its] claims." Id.

Thereafter, on September 30, 2011, Plaintiffs served subpoenas on three non-party companies: Property Management Support, Inc. ("PMSI"), Property Support Systems, LLC ("PSS"), and TripleNet Equities, Lt. ("TNE"). Defendants, PSDG and Sleiman, filed the instant Motion asking the Court to enter a protective order preventing Plaintiffs from obtaining the requested documents from these entities or, in the alternative, quashing the subpoenas.

## II. ANALYSIS

PSDG and Sleiman argue multiple reasons why a protective order should be entered or the subpoenas quashed. Specifically, PSDG and Sleiman argue the subpoenas seek irrelevant information, are overly broad, and seek private or confidential information. Plaintiffs respond that the subpoenas are narrowly tailored to

seek relevant information and that Defendants have failed to show good cause exists to prevent the disclosure of any private or confidential information.

Rule 45(c) of the Federal Rules of Civil Procedure governs quashing or modifying subpoenas. The subpoenas at issue here were not issued to the parties, but rather, to three non-parties. While the Eleventh Circuit allows parties standing to challenge subpoenas issued to non-parties, it is only if the party alleges a "'personal right or privilege' with respect to the subpoenas." Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., 231 F.R.D. 426, 429 (M.D. Fla. 2005) (quoting Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1979)). In the instant case, Defendants have made no allegations regarding a personal right or privilege. Therefore, as the instant motion is also based on Rule 26, the Court will analyze it as a motion for a protective order.

Rule 26(c) provides that upon a showing of good cause, a court may " issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking a protective order has the burden to demonstrate good cause, and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" supporting the need for a protective order. United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978). Rule 26 permits the discovery of "any non-privileged matter that is relevant to any party's claim or defense . . ." Rule 26(b), Fed.R.Civ.P. Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. PSDG and Sleiman broadly argue that the documents sought by Plaintiffs are not relevant because they

deal with three companies who are "wholly unrelated to the allegations in the Second Amended Complaint." (Doc. 92, p.7). The Court does not agree with this contention.

Defendants seem to argue that any discovery from the three non-parties is *per se* irrelevant because the non-parties are not specifically mentioned in the Complaint and there is no contention that they had anything to do with Plaintiffs. Plaintiffs note that through discovery, they have learned that each non-party has provided significant sums of money to J.Ward and that the checks issued by these non-party companies to J.Ward were all signed by Sleiman. The Second Amended Complaint seeks to hold Sleiman and PSDG liable for J.Ward's breach of contract on an alter ego theory. To show alter ego liability, Plaintiffs must establish three elements:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

Molinos Valle Del Cibao v. Lama, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting Gasparini v. Pordomingo, 972 So.2d 1053, 1055 (Fla. 3rd DCA 2008) (citations omitted)). It is Plaintiffs' theory that Sleiman owned and/or controlled each of the three non-party companies and that each of these companies paid funds to J.Ward via checks signed by Sleiman.

The term "relevancy" under Federal Rule 26 has been construed broadly to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v.

Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978). The undersigned finds information regarding the non-party companies may lead to the discovery of admissible evidence regarding whether Sleiman used the non-party companies to dominate and control J.Ward and/or whether Sleiman used J.Ward fraudulently or for an improper purpose. Accordingly, documents relating to the three non-party corporations are not irrelevant *per se.* The Court will now turn to Defendants' more specific objections.

**A.** **Requests for documents relating to the formation and ownership of the non-parties**

Defendants object to these requests on the basis that they seek irrelevant information. The undersigned believes these documents are indeed relevant as they may help to show Sleiman was the alter ego of J.Ward and/or used it fraudulently. Further, Defendants argue the requests for documents regarding the ownership of the non-parties are overbroad because they seek documents from 1994, 1998, and 2005 (the dates when each company was formed) to the present. While this does appear to be a long period of time, the undersigned finds it is possible the ownership of these companies may have changed during the course of their existence and therefore, it is not necessary for Plaintiffs to limit their requests to a specific time period.

**B.** **Requests seeking all documents relating to any distribution made to any member or shareholder of the non-parties in 2005, 2006, and 2007**

Defendants argue these requests infringe on the privacy interests of non-parties under both the U.S. and Florida Constitutions. As Plaintiffs correctly point out, the Florida Supreme Court has determined:

> While the general rule in Florida is that personal financial information is ordinarily discoverable only in aid of execution

> after judgment has been entered, where materials sought by
> a party "would appear to be relevant to the subject matter of
> the pending action," the information is fully discoverable. A
> party's finances, if relevant to the disputed issues of the
> underlying action, are not excepted from discovery under
> this rule of relevancy, and courts will compel production of
> personal financial documents and information if shown to be
> relevant by the requesting party.

Friedman v. Heart Institute of Port St. Lucie, Inc., 863 So.2d 189, 194 (Fla. 2003) (internal citations omitted). Here, Defendants have provided no information regarding the identity of the individual(s) whose privacy would be infringed by this request. In any event, the Court is satisfied the information is relevant as it may shed light on the relationship between Sleiman and these three entities who have provided funds to J.Ward. Accordingly, it will not bar discovery of the information on privacy grounds.

Defendants also oppose these requests on the grounds that they seek impermissible prejudgment asset discovery, are overbroad, unduly burdensome, and seek documents which are not relevant. The undersigned does not agree. These requests are limited to a three year period of time, which the Court finds reasonable. Additionally, Defendants have made no showing indicating that compiling this information would be burdensome, much less unduly burdensome. Finally, as noted above, the Court finds the requests seek relevant information. Therefore, the Court will not quash the requests seeking distribution information.

**C.    Requests seeking documents, including any communications relating to any agreements between the three non-parties and J.Ward, Ms. Ward, PSDG, or Sleiman**

Defendants oppose these requests on the grounds that they do not contain time periods and therefore, are overbroad and the documents at issue are not relevant to the

litigation.  As for relevance, Defendants argue that information regarding agreements between the non-parties and the Defendants are not relevant unless they relate to NetJets.  The Court does not agree.  This case deals with alter ego liability and therefore, information regarding the relationships between the non-party companies and the Defendants would be relevant as they may show J.Ward was really a sham entity and/or that Defendants used it fraudulently or for an improper purpose.

As for a time period, the requests regarding agreements with J.Ward, Ms. Ward, and PSDG do not contain any time limitations.  However, the requests regarding agreements with Sleiman are limited to January 1, 2005 through December 31, 2007.  The Court agrees that it is not reasonable for there to be no time limits and Plaintiffs have not provided any justification for such broad requests.  As Defendants do not object to the January 1, 2005 through December 31, 2007 period, the Court will modify the subpoenas so that the requests seeking information regarding agreements between the non-parties and J.Ward, Ms. Ward, and PSDG are limited to the period from January 1, 2005 through December 31, 2007.[1]

---

[1] To the extent PSDG objects to the requests because they seek confidential and/or trade secret information, PSDG has the burden to show that the information sought by Plaintiffs is confidential and that disclosure would be harmful. Gober v. City of Leesburg, 197 F.R.D. 519, 521 (M.D. Fla. 2000) (citing Kaiser Aluminum & Chemical Corp. v. Phosphate Engineering and Const. Co., Inc., 153 F.R.D. 686, 688 (M.D. Fla. 1994)).  PSDG has made no such showing.  Furthermore, to the extent Sleiman objects to these requests as seeking improper prejudgment discovery, the Court finds the information is relevant and therefore, permissible.

**D.  Requests seeking any information regarding loan arrangements between the non-parties and J.Ward or Ms. Ward**

Defendants object to these requests on the grounds that such information is not relevant.  As discussed above, Plaintiffs believe Sleiman owned and/or controlled the three non-parties and that he and Ms. Ward were the alter egos of J.Ward.  As such, the existence or non-existence of loan agreements between the non-parties and either J.Ward or Ms. Ward may demonstrate that the payments from the non-entities to J.Ward were for an improper purpose.  Accordingly, the Court will allow those requests to stand.

**E.  Requests seeking all communications to or from the non-parties and J.Ward, Ms. Ward, PSDG, and Sleiman**

Defendants contend these requests are overly broad, unduly burdensome, seek irrelevant information, and seek documents containing confidential information and/or trade secrets.  As for being overbroad, the requests for communications to or from J.Ward, Ms. Ward, and PSDG do not contain time limits, while the requests for communications to or from Sleiman are limited to the period from January 1, 2005 through December 31, 2007.  Once again, Plaintiffs have provided no justification for failing to include time limitations, nor have they suggested any alternative time limitations.  The undersigned finds the period from January 1, 2005 through December 31, 2007 to be reasonable and therefore, orders the subpoenas modified to the extent that the non-parties need only produce documents reflecting all communications to or from the non-parties and J.Ward, Ms. Ward, and PSDG from January 1, 2005 through December 31, 2007.

Defendants have not provided any support for their arguments that these requests are unduly burdensome or seek confidential information and/or trade secrets. As such, the Court will not modify or quash the subpoenas on those grounds. Finally, the undersigned finds these requests seek relevant information which may show J.Ward was the alter ego of one or more of the Defendants.

**F.    Requests seeking documents showing any payment issued by the non-parties to J.Ward or Ms. Ward, to any third-party on behalf of J.Ward or Ms. Ward, or any gift given to J.Ward or Ms. Ward from the non-parties**

Defendants take the position that these requests are overbroad and do not seek relevant information. None of these requests have any time limitations and Plaintiffs have not provided any justification for the lack of time limitations. The Court will limit these requests to the time period from January 1, 2005 through December 31, 2007. As for relevance, Defendants again argue that to the extent these requests seek agreements not related to NetJets, they are not relevant. However, as discussed multiple times throughout this Order, the undersigned believes documents showing loans or payments made to or on behalf of J.Ward or Ms. Ward are relevant insofar as they may show J.Ward was the alter ego of one of the Defendants.[2]

Accordingly, after due consideration, it is hereby

**ORDERED**:

Defendants' Renewed Motion for Protective Order or in the alternative, to Quash Subpoenas (Doc. 92) is **DENIED**. However, the Court directs the subpoenas to be

---

[2] Once again, to the extent Defendants argue these requests seek confidential or trade secret information, they have not met their burden of showing the existence of such information.

-9-

modified as discussed in the body of this Order and the non-parties shall provide responsive documents no later than **Friday, January 13, 2012**.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this   22nd   day of December, 2011.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record