NETJETS AVIATION, INC. and NETJETS
SALES, INC.,

        Plaintiffs,

vs.                               Case No.  3:10-cv-483-J-32MCR

PETER SLEIMAN DEVELOPMENT GROUP,
LLC, PETER SLEIMAN, and JENNIFER
WARD,

        Defendants.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant, Jennifer Ward's Second Motion
to Quash Subpoenas and Motion for Protective Order (Doc. 93) filed October 20, 2011.
Plaintiffs filed their response to the Motion on November 7, 2011 (Doc. 95).
Accordingly, the motion is now ripe for judicial review.

## I.  BACKGROUND

The instant litigation stems from contracts entered into between Plaintiffs and a
Florida corporation, J.Ward.  When J.Ward breached the contracts by failing to pay
monies owed, Plaintiffs sued J.Ward in Ohio state court and obtained a judgment
against it.  Plaintiffs were unable to collect on the judgment and subsequently brought
the instant litigation initially alleging claims for corporate alter ego liability for breach of
contract and breach of contract implied-in-fact against Peter Sleiman Development
Group ("PSDG") related to the purchase and lease of fractional ownership interests in

jet aircrafts by J Ward, Inc. (Doc. 32). Plaintiffs also alleged claims of quasi-contract and unjust enrichment against PSDG, Peter Sleiman ("Sleiman"), and Jennifer Ward ("Ward") for private jet travel and related services provided to and received by Defendants. Id. Plaintiffs subsequently amended the complaint to include claims for alter ego liability against Sleiman and Ward related to J.Ward's purchase and lease of the fractional ownership interests in the aircraft. (Doc. 63).

Back in January 2011, prior to amending the complaint to include the alter ego claims against Sleiman and Ward, Plaintiffs served a subpoena on SunTrust Bank seeking information regarding various bank accounts, mortgages, and/or loan agreements relating to Ward. Ward filed a motion to quash and a motion for protective order (Doc. 39), which the Court granted on February 28, 2011 (Doc. 46). In granting the motion to quash, the Court noted that the information Plaintiffs were seeking was not relevant to any claims asserted against Ward. At the time, the only claims against her were for quasi-contract and unjust enrichment.

Thereafter, on October 5, 2011, Plaintiffs served subpoenas on SunTrust and Bank of America again seeking information regarding Ward's accounts. In response, Ward filed the instant motion seeking a protective order preventing Plaintiffs from obtaining the requested documents from the banks.

## II. ANALYSIS

Ward argues a protective order should be entered or the subpoenas quashed because Plaintiffs are engaging in a fishing expedition in which "irreparable harm to Ms. Ward is guaranteed based on the overly broad and speculative request[s]." (Doc. 93,

p.6). Ward takes the position that her privacy interests in the financial information sought by Plaintiffs far outweigh any need Plaintiffs have for the information because the information is not relevant to any claims in the case. Ward points to the prior Order granting her first motion to quash and argues that Plaintiffs are using the "exact same subpoena" and asks for sanctions against Plaintiffs "for their improper conduct." (Doc. 93, p.2). Plaintiffs respond that the information they seek is relevant and the subpoenas should be permitted. Plaintiffs point out that the account with Bank of America is titled "Jennifer Ward dba J.Ward" and that this account was not disclosed when Ward responded to Plaintiffs' earlier discovery in aid of execution.[1]

A court must quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and the court may quash or modify a subpoena if it discloses certain confidential information. Rule 45(c)(3)(A)(iii) & (B)(i), Fed.R.Civ.P. Further, the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c)(1), Fed.R.Civ.P. The party seeking a protective order has the burden to demonstrate good cause, and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" supporting the need for a protective order. United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).

---

[1] The Court finds it somewhat concerning that counsel for Ward seems to rely on the Court's February 28, 2011 Order quashing to first subpoena issued to SunTrust without acknowledging that the Second Amended Complaint now states claims against Ms. Ward for alter ego liability. Similarly, the Court finds disconcerting counsel for Ward's failure to mention that the account with Bank of America is listed in J.Ward's name in addition to Ms. Ward's name.

In the instant case, Ward argues discovery of her personal financial information is prohibited by the Florida Constitution's right to privacy. Ward is correct that "the law in the state of Florida recognizes an individual's legitimate expectation of privacy in financial institution records." Winfield v. Division of Pari-Mutuel Wagering, Dept. of Business Regulation, 477 So.2d 544, 548 (Fla. 1985). However, this privacy right does not prohibit the discovery of financial records in every instance. Instead, the Florida Supreme Court has determined:

> [w]hile the general rule in Florida is that personal financial information is ordinarily discoverable only in aid of execution after judgment has been entered, where materials sought by a party "would appear to be relevant to the subject matter of the pending action," the information is fully discoverable. A party's finances, if relevant to the disputed issues of the underlying action, are not excepted from discovery under this rule of relevancy, and courts will compel production of personal financial documents and information if shown to be relevant by the requesting party.

Friedman v. Heart Institute of Port St. Lucie, Inc., 863 So.2d 189, 194 (Fla. 2003) (internal citations omitted). Accordingly, the test is one of relevancy.

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Rule 26(b)(1), Fed.R.Civ.P. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Plaintiffs argue the financial information is relevant because it will show that Ward:

> controlled and improperly used the fictional company, J.Ward, as her own private slush fund. She commingled her personal finances with J.Ward and depleted J.Ward's

corporate funds for her and Sleiman's own personal
expenses and gambling.

(Doc. 95, p.3). Through a previously issued subpoena to SunTrust requesting the

records for J.Ward's bank account, Plaintiffs learned of multiple payments from

J.Ward's account to Ward's personal accounts, including payments for her personal

mortgage. Additionally, Plaintiffs learned of other unidentified debits and wire transfers

from J.Ward's account.

The Court is satisfied that Plaintiffs have shown the financial records from both

institutions are relevant. Plaintiffs are alleging Ward (along with Sleiman and PSDG)

were the alter egos of J.Ward. The Second Amended Complaint alleges Ms. Ward

commingled J.Ward's funds with her own personal funds. The records from Bank of

America are from an account entitled "Jennifer Ward dba J.Ward." Ward does not

address the fact that this account is in both her name and J.Ward. Clearly, the records

from this account would be relevant in the instant matter where Plaintiffs allege Ms.

Ward was the alter ego of J.Ward. As for the records from SunTrust, the Court is also

convinced they would be relevant. Plaintiffs have already uncovered examples of Ward

transferring funds from J.Ward's account to her personal accounts. In examining the

records for J.Ward's account, Plaintiffs discovered numerous unidentified transfers and

debits. It is certainly reasonable for Plaintiffs to assume there may be further examples

of transfers from J.Ward's account in the information regarding Ms. Ward's personal

accounts as well as other evidence potentially showing Ms. Ward utilized J.Ward

fraudulently or for an improper purpose. Accordingly, the undersigned finds the

subpoenas seek relevant information and therefore, will deny Ward's motion in its

entirety. See All About Cruises, Inc. v. Cruise Options, Inc., 889 So.2d 905, 906 (Fla. 4th DCA 2004) (court denied certiorari review of trial court's denial of protective order seeking to prevent plaintiff from obtaining personal financial records of owner of company in alter ego case); Eitzen Chemical (Singapore) Pte, Ltd. v. Carib Petroleum, No. 10-23512-CIV-PAS, 2011 WL 4527435, *3 (S.D. Fla. Sept. 28, 2011) (court denies protective order in alter ego case where bank records could show defendant disregarded corporate form and employed the entities for his individual purposes).

While the undersigned is certainly mindful of Ms. Ward's privacy concerns, the information sought is relevant and the Court believes discoverable. However, the Court strongly suggests, to the extent they have not done so already, that the parties enter into a mutually agreeable confidentiality agreement where they can agree to limit review of Ms. Ward's financial records.

Accordingly, after due consideration, it is hereby

**ORDERED**:

Defendant, Jennifer Ward's Second Motion to Quash Subpoenas and Motion for Protective Order (Doc. 93) is **DENIED**.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this __22nd__ day of December, 2011.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record