NETJETS AVIATION, INC. and NETJETS
SALES, INC.,

        Plaintiffs,

vs.                              Case No.  3:10-cv-483-J-32MCR

PETER SLEIMAN DEVELOPMENT GROUP,
LLC, PETER SLEIMAN, and JENNIFER
WARD,

        Defendants.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Plaintiffs' Motions to Compel (Docs. 97 and

98) directed to Defendants, Peter Sleiman Development Group ("PSDG") and Peter

Sleiman ("Sleiman").  Defendants filed a response in opposition to these motions (Doc.

103) on November 22, 2011.  Accordingly, the matter is now ripe for judicial review.

## I.  BACKGROUND

The instant litigation stems from contracts entered into between Plaintiffs and a

Florida corporation, J.Ward.  When J.Ward breached the contracts by failing to pay

monies owed, Plaintiffs sued J.Ward in Ohio state court and obtained a judgment

against it.  Plaintiffs were unable to collect on the judgment and subsequently brought

the instant litigation initially alleging claims for corporate alter ego liability for breach of

contract and breach of contract implied-in-fact against PSDG related to the purchase

and lease of fractional ownership interests in jet aircrafts by J Ward, Inc.  (Doc. 32).

Plaintiffs also alleged claims of quasi-contract and unjust enrichment against PSDG, Sleiman, and Jennifer Ward ("Ward") for private jet travel and related services provided to and received by Defendants.  Id.  Plaintiffs subsequently amended the complaint to include claims for alter ego liability against Sleiman and Ward related to J.Ward's purchase and lease of the fractional ownership interests in the aircraft.  (Doc. 63).

On December 22, 2010, Plaintiffs served Defendants, PSDG and Sleiman, with its First Set of Interrogatories and Requests for Production.  Defendants responded on February 11, 2011 by filing a Motion for Protective Order (Doc. 41) seeking an order preventing Plaintiffs from obtaining prejudgment financial worth discovery.  Prior to the Court ruling on the Motion for Protective Order, Plaintiffs filed the Second Amended Complaint (Doc. 63) in which they added claims for alter ego liability against Sleiman and Ward for breach of contract.  Defendants, PSDG and Sleiman, filed a Motion to Dismiss the alter ego claims against them.  (Doc. 67).  Judge Corrigan referred the Motion to Dismiss to the undersigned and on June 13, 2011, the undersigned issued a Report and Recommendation (Doc. 75) that the Motion be granted without prejudice.  In light of that ruling, the undersigned also granted the Motion for Protective Order.  (Doc. 76).  However, upon the objections of both sides, Judge Corrigan denied the Motion to Dismiss in an Order dated September 27, 2011.  (Doc. 88).  In that Order, Judge Corrigan determined that at the pleadings stage, Plaintiffs' alter ego allegations regarding whether J.Ward was used fraudulently or for an improper purpose were sufficient and "further discovery [would] provide the proper record upon which to

determine whether NetJets [could] ultimately make the required showing necessary to sustain [its] claims." Id.

After the Court's ruling denying the Motion to Dismiss, Plaintiffs attempted to have PSDG and Sleiman respond to the discovery requests. Defendants refused and objected to each discovery request on the basis of relevancy and that the documents or information sought was protected by the trade secret privilege under Florida Statute §90.506. Despite Plaintiffs' offer to enter into a confidentiality agreement, Defendants refused to produce any information. Accordingly, Plaintiffs filed the instant Motions to Compel.

## II. ANALYSIS

Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. See Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984). The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. See Westrope, 730 F.2d at 731.

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore, embody a fair and just result. See United States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983 (1958). Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion

requiring judicial intervention.  Furthermore, "[d]iscovery in this district should be practiced with a spirit of cooperation and civility."  Middle District Discovery (2001) at 1.

In the instant case, Plaintiffs contend both PSDG and Sleiman have failed to properly respond to numerous discovery requests.  The Court will first address Plaintiffs' Motion to Compel directed to PSDG and will then turn to the motion directed to Sleiman.

## A.    **Plaintiffs' Motion to Compel Discovery from PSDG (Doc. 97)**

In this Motion, Plaintiffs claim PSDG failed to properly respond to twenty-four different requests.  The Court will address each of these requests.

### 1.    **Interrogatory No. 4**

This request seeks information regarding the commissions paid to J.Ward, as well as the agreement under which the commissions were paid.  PSDG objects to the interrogatory as being overbroad (because it does not have a specified time period) and as seeking information not relevant to the instant dispute.  The information sought in this request certainly appears to be relevant to the Court.  While PSDG does not address this particular request in its response, it makes general claims that Plaintiffs are "attempting to conduct discovery related to the business activities of PSDG which are wholly unrelated to the allegations of the Complaint."  (Doc. 103, p.8).  PSDG also makes arguments about the merits of Plaintiffs' claims such that "Plaintiffs now seek to rewrite their contracts years later and have the Court create an 'implied contract' inserting PSDG in place of J.Ward, Inc."  (Doc. 103, p.7).  PSDG appears to have forgotten that the Second Amended Complaint also alleges it is liable on an alter ego theory and that the Court denied its motion to dismiss such claim.

-4-

In the Second Amended Complaint, Plaintiffs are alleging PSDG was the corporate alter ego for J.Ward. To show alter ego liability, Plaintiffs must establish three elements:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

Molinos Valle Del Cibao v. Lama, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting Gasparini v. Pordomingo, 972 So.2d 1053, 1055 (Fla. 3rd DCA 2008) (citations omitted)). As such, information regarding commissions paid to J.Ward may shed light on whether or not J.Ward was controlled by PSDG and/or whether J.Ward was used fraudulently or for an improper purpose.

As for PSDG's objection regarding the time period, it appears from PSDG's response to Interrogatory No. 3, that PSDG and J.Ward entered into an agreement regarding payment of a consulting free in late 2005 or early 2006. Therefore, PSDG shall provide information regarding the commissions paid to J.Ward, as well as the agreement under which the commission was paid from the date the agreement began until the present.[1]

---

[1] The Court is not certain whether J.Ward continues to exist. To the extent it does, PSDG shall provide the information until the present. Obviously, if it no longer exists, PSDG need only produce information until the date it ceased to exist. The same is true for any request in which the Court orders PSDG to produce documents from the date of J.Ward's formation to the present.

### 2. Interrogatories Nos. 5 and 6

In these interrogatories, Plaintiffs seek the identities of the brokers and real estate agents PSDG had a contractual relationship with since January 1, 2005 and to identify all payments to each of these brokers or real estate agents.[2] PSDG objects to these requests as being overly broad and as seeking irrelevant information. Further, PSDG claims the information regarding payments to brokers or real estate agents is confidential and/or trade secret information. Plaintiffs respond that this information is relevant because they contend the relationship between PSDG and J.Ward is at issue. PSDG alleges it had an agreement to pay J.Ward commissions. Plaintiffs believe the services Ms. Ward provided, for which PSDG allegedly paid J.Ward, are "very similar, if not identical to those of a licensed real estate agent or broker." (Doc. 97, p. 10). Therefore, Plaintiffs believe "information regarding the contractual agreements with real estate agents and brokers and the commissions paid by PSDG may lead to the discovery of admissible evidence regarding the legitimacy of any money transfers from PSDG to [J.Ward]." Id. Through prior discovery, Plaintiffs have learned of numerous payments made to J.Ward. Defendants contend these payments were commissions to Ms. Ward. The information regarding commissions paid to other real estate agents and brokers would allow Plaintiffs to compare the payments to determine whether the payments to J.Ward are consistent with commissions paid to other agents or brokers. Accordingly, the Court is satisfied the information sought is relevant.

PSDG also claims the information sought is confidential, trade secret information. PSDG argues disclosure of this information would "give competitors a competitive

---

[2] Plaintiffs also sought production of all documents relating to any payment issued by PSDG to any real estate agent or broker (See Request for Production No. 11).

advantage over PSDG, it could be used against PSDG by existing tenants[,] and it could place PSDG at a disadvantage in negotiating with brokers and real estate agents." (Doc. 97, p. 10).  Although PSDG has not formally sought a protective order, in opposing Plaintiffs' Motions to Compel, PSDG argues the information sought by Plaintiffs should be protected.  Accordingly, the Court will proceed as if PSDG requested a protective order.  Rule 26(c) of the Federal Rules of Civil Procedure allows courts to enter protective orders for good cause shown in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c), Fed. R. Civ. P.  Rule 26(c)(1)(G) specifically provides that a protective order may be used so "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Rule 26(c)(1)(G), Fed. R. Civ. P.  One seeking a protective order carries the burden of showing good cause and/or the right to be protected.  See United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978).  This burden "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." Garrett, 571 F.2d at 1326 n.3 (citations omitted).

Accordingly, as the party resisting discovery, PSDG has the burden to show that the information sought by Plaintiffs is confidential and that disclosure would be harmful. Gober v. City of Leesburg, 197 F.R.D. 519, 521 (M.D. Fla. 2000) (citing Kaiser Aluminum & Chemical Corp. v. Phosphate Engineering and Const. Co., Inc., 153 F.R.D. 686, 688 (M.D. Fla. 1994)).  Only after such a showing is made does the burden shift to the party seeking the discovery to show the information sought is relevant and necessary.  Id.  In the instant case, PSDG has failed to satisfy its burden to show the information sought by Plaintiffs is confidential and that disclosure would be harmful.  In

its response to the Motion to Compel, PSDG does not even address its claim that this information is protected trade secret information.  Accordingly, the only argument is that provided in PSDG's objection to the interrogatories.  The objection simply states that disclosure of this information would "give competitors a competitive advantage over PSDG, it could be used against PSDG by existing tenants[,] and it could place PSDG at a disadvantage in negotiating with brokers and real estate agents."  (Doc. 97, p.10). This is not sufficient.  While all of this may be true, Plaintiffs are not competitors with PSDG and by entering into a confidentiality agreement, PSDG could ensure that this information is not made available to its competitors, existing tenants, or other brokers or real estate agents.  As such, the Court finds PSDG has failed to satisfy its burden to resist discovery and will therefore, grant Plaintiffs' Motion to Compel with respect to these requests.  PSDG shall provide the identities of the brokers and real estate agents PSDG had a contractual relationship with since January 1, 2005 and to identify all payments to each of these brokers or real estate agents.  Additionally, PSDG shall produce all documents relating to any such payments, including, but not limited to commissions, draws, reimbursements, fees, and bonuses from January 1, 2005 to the present.

      **3.**    **Interrogatory No. 7**

This request seeks the identities of all PSDG employees since its formation, including the hire dates, a description of their job title and responsibilities, and termination dates.  PSDG objected to this request as seeking irrelevant information and being overbroad in time.  Plaintiffs argue this information is relevant because J.Ward

lacked any corporate independence from PSDG and therefore, information regarding PSDG's employees and the services they performed is relevant to the alter ego claims. The Court does not agree. The Court does not see and Plaintiffs have not provided sufficient justification showing how information regarding PSDG's employees and their duties would assist Plaintiffs in showing any of the elements necessary for an alter ego claim. Accordingly, the Court will not require PSDG to respond to this request.

### 4.    Interrogatory No. 11

This interrogatory seeks information regarding all business trips of PSDG where private jet travel was used, including the provider of the flight, the date of the flight, and the name of the client or prospective client. PSDG objects that the request is overbroad, seeks irrelevant information, and seeks confidential, trade secret information. As the complaint in this case alleges PSDG utilized private jets provided by Plaintiffs and failed to pay for such service, the Court is satisfied that the request seeks relevant information. Additionally, PSDG has failed to carry its burden of showing that information regarding its clients is confidential trade secret information. Once again, PSDG has not provided "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." Garrett, 571 F.2d at 1326 n.3. Accordingly, the Court will require PSDG to respond to this request. The Court believes, however, the request should have some sort of time limitation. Therefore, PSDG shall provide information regarding all business trips of PSDG where private jet travel was used from January 1, 2005 to December 31, 2009, including the provider of the flight, the date of the flight, and the name of the client or prospective client.

**5.** **Interrogatory No. 12**

This request seeks the identity of all agreements entered into by PSDG for private jet services, including the date of the agreement, and when and how the agreement was terminated. PSDG objects to the request as being overbroad and not seeking relevant information. Plaintiffs argue the information is relevant because the value of private jet services is at issue and Sleiman and Ward issued statements that the NetJets private aircraft were used almost exclusively for PSDG business. Therefore, Plaintiffs believe information regarding whether PSDG utilized other private jet services would lead to admissible evidence regarding the claims in this case.

The Court does not agree that the value of private jet services is at issue and Plaintiffs did not provide sufficient explanation regarding such. Whether PSDG utilized other private jet service may be relevant to prove or disprove the claims that NetJets private jet service was used mainly for PSDG business. Accordingly, the Court will direct PSDG to provide the names of any other private jet service providers with whom they entered into agreements and the dates of such agreements from January 1, 2005 to the present.

**6.** **Interrogatory No. 13**

This request asks PSDG to identify all expenses paid by PSDG on behalf of J.Ward, including the date of the payment, the payee, and the amount paid. PSDG objects that the request is overly broad (because it is not restricted to the time period at issue in the complaint) and seeks information that is not relevant to the issues in this case. The Court finds the information sought is clearly relevant to whether J.Ward was

the alter ego of PSDG.  Furthermore, as Plaintiffs allege the issues related to the improper use of J.Ward is not limited to the duration of the NetJets contracts, the Court agrees that this request does not need to be limited to that time period.  Instead, PSDG shall respond to this request from the formation of J.Ward to the present.

**7.    Interrogatory Nos. 14 and 15**

These requests seek information regarding all real estate projects or transactions that involved J.Ward and Jennifer Ward, including the name of the prospective client or client and the location of the real estate.  PSDG objects to this request as being overbroad (because it is not restricted to the time period at issue in the complaint); seeking irrelevant information; and seeking confidential, trade secret information. Additionally, PSDG argues the term "involved" is vague.  As for J.Ward, Plaintiffs claim the information is relevant because it may show J.Ward did not actually perform any services for PSDG and therefore, will support their claim that J.Ward was used improperly by Defendants.  The Court agrees that the information regarding projects or transactions where J.Ward provided services is relevant.  Once again, PSDG has not satisfied its burden of showing that the information sought is confidential trade secret information or that it will suffer harm if that information is disclosed to Plaintiffs. Furthermore, the Court does not believe the term involved is unduly vague or ambiguous nor does the Court believe the request needs to be limited to the time period at issue in this case.  Accordingly, PSDG is required to produce information regarding all real estate projects or transactions where J.Ward provided any services from the formation of J.Ward until the present.

As for Jennifer Ward, because Defendants allege commissions earned by Ms. Ward were paid to J.Ward, information regarding any real estate transactions she worked on may lead to the discovery of admissible evidence regarding Plaintiffs' alter ego claims. Therefore, PSDG is also required to produce information regarding all real estate projects or transactions where Jennifer Ward provided any services from the formation of J.Ward until the present.[3]

## 8.    Interrogatories Nos. 16 and 17

These interrogatories seek information regarding all lease agreements under which J.Ward and Jennifer Ward received compensation. PSDG objected to these requests on the basis that they were overbroad and sought irrelevant information. For the reasons listed in the discussion regarding Interrogatories Nos. 14 and 15, the Court will require PSDG to provide information regarding all lease agreements under which J.Ward or Jennifer Ward received compensation from the formation of J.Ward until the present. Additionally, as Plaintiffs request copies of the lease agreements at issue in these interrogatories, the Court will again notify counsel for PSDG of the option of producing the business records in lieu of answering these interrogatories.

---

[3] In Requests to Produce Nos. 17 and 19, Plaintiffs seek documents and communications relating to any real estate project or transaction where Jennifer Ward was the broker. For the reasons listed for Interrogatories Nos. 14 and 15, the Court will require PSDG to produce any such documents from the date of the formation of J.Ward until the present. However, if PSDG elects, it may produce the business records in lieu of answering the interrogatories pursuant to Rule 33(d). Counsel shall ensure compliance with the practices listed in the Middle District Discovery Handbook, pp. 11-12.

**9.      Interrogatory No. 18**

This interrogatory asks PSDG to identify all transactions that provided direct compensation, in any form, to Jennifer Ward, individually.  It also asks PSDG to specify the form of compensation, the amount, and the date of each payment.  PSDG objects to this request as being overbroad (because it is not restricted to the time period at issue in the complaint), as seeking irrelevant information, and because it violates Ms. Ward's right to privacy under the Florida and U.S. Constitutions.  Again, the Court finds the information relevant (but only as to the dates of J.Ward's existence).  As for the claim that the information should not be produced because of Ms. Ward's privacy interests, the Court does not agree.  PSDG is correct that "the law in the state of Florida recognizes an individual's legitimate expectation of privacy in financial institution records."  Winfield v. Division of Pari-Mutuel Wagering, Dept. of Business Regulation, 477 So.2d 544, 548 (Fla. 1985).  However, this privacy right does not prohibit the discovery of financial records in every instance.  Instead, the Florida Supreme Court has determined:

> [w]hile the general rule in Florida is that personal financial information is ordinarily discoverable only in aid of execution after judgment has been entered, where materials sought by a party "would appear to be relevant to the subject matter of the pending action," the information is fully discoverable.  A party's finances, if relevant to the disputed issues of the underlying action, are not excepted from discovery under this rule of relevancy, and courts will compel production of personal financial documents and information if shown to be relevant by the requesting party.

Friedman v. Heart Institute of Port St. Lucie, Inc., 863 So.2d 189, 194 (Fla. 2003) (internal citations omitted).  Accordingly, the test is one of relevancy.

As noted above, the undersigned finds information regarding compensation to Jennifer Ward would be relevant to the alter ego claims and therefore, PSDG shall provide information regarding all transactions that provided direct compensation, in any form, to Jennifer Ward, individually from the date J.Ward was formed until the present.

**10.    Request for Production No. 2**

This request seeks all business minutes or reports for PSDG since January 1, 2005.  PSDG objects that the request is overly broad, unduly burdensome, seeks irrelevant information, and seeks confidential, trade secret information.  Plaintiffs argue the information sought is relevant because:

> PSDG, through Sleiman and Jennifer Ward (both officers of PSDG) improperly used the fictional business, J.Ward, to avoid liabilities and to receive access to private jet aircrafts and services.  NetJets believes PSDG's minutes and reports will lead to the discovery of admissible evidence of PSDG's control and improper use of J.Ward.

(Doc. 97, p.17).  Based on this statement, the Court agrees the request seeks relevant information, however, as drafted, it is overly broad.  While PSDG states it is unduly burdensome, PSDG has provided no information supporting this bald assertion. Further, PSDG has again failed to satisfy its burden of showing the requested information is confidential trade secret information or would cause harm if produced to Plaintiffs.  Accordingly, the Court directs PSDG to produce all business minutes or reports for PSDG since January 1, 2005 relating to J.Ward or Plaintiffs in any way.

**11.    Request for Production No. 10**

This request seeks all documents relating to any commission paid to Jennifer Ward as part of any real estate project or transaction.  The Court has already

considered the issues involved in this request and for the reasons listed for Interrogatory No. 15, the Court directs PSDG to produce all documents relating to any commission paid to Jennifer Ward as part of any real estate project or transaction from the date of J.Ward's existence, to the present.

### 12. Request for Production Nos. 14 and 15

These requests seek all communications relating to any NetJets flight used by an employee, officer, or director of PSDG and all communications relating to NetJets regardless of whether PSDG was the sender or recipient of the communication. PSDG objects to the use of the term "relating to" as being vague. The Court does not believe the term "relating to" is vague and directs PSDG to respond to these requests as drafted.

### 13. Request for Production No. 22

This request seeks all employment records for Jennifer Ward, including, but not limited to W-2, W-4, and 1099 forms, benefit packages, employee handbooks, contracts, expense reports, and reimbursements. PSDG objects to this request as being overbroad in time, not relevant, and an invasion of Ms. Ward's privacy rights. Plaintiffs respond that the information sought in this request is relevant because PSDG indicated Ms. Ward was an employee of PSDG and the owner and only employee of J.Ward. Plaintiffs believe the documents relating to Ms. Ward's employment with PSDG will help shed light on any payments she received from PSDG and will assist in revealing the relationship between PSDG, Ms. Ward, and J.Ward for the alter ego

claims.  The Court believes the documents are relevant and therefore, will permit their discovery.

### 14.    Request for Production No. 23

This request seeks all annual payroll records for all employees of PSDG since its formation.  PSDG raises numerous objections.  The Court believes this request is overly broad.  Plaintiffs have not shown why the payroll records for all employees of PSDG would be relevant.  Accordingly, the Court will not require PSDG to respond to this discovery request.

### 15.    Request for Production No. 24

This request seeks all documents relating to any payment issued by PSDG on behalf of Jennifer Ward to any person or third-party entity, including, but not limited to, employees, vendors, creditors, real estate agents, brokers, and professionals.  PSDG raised a myriad of objections, none of which have any merit or are supported by any facts or argument by PSDG.  Further, the Court believes these documents may lead to the discovery of admissible evidence regarding Plaintiffs' alter ego claims.  Accordingly, PSDG shall produce all documents relating to any payment issued by PSDG on behalf of Jennifer Ward to any person or third-party entity, including, but not limited to, employees, vendors, creditors, real estate agents, brokers, and professionals from January 1, 2005 to the present.

**B.    Plaintiffs' Motion to Compel Discovery from Defendant, Peter Sleiman (Doc. 98)**

In this Motion, Plaintiffs contend Sleiman has failed to properly respond to five discovery requests.  The Court will examine each of these requests.

### 1.    Interrogatory No. 9

This interrogatory asks Sleiman to identify all NetJets flights he traveled on for PSDG business along with the identity of any other passengers, the destination, and the client or prospective client.  Sleiman objects to the request on the basis that Plaintiffs have flight logs and therefore, already have the information requested.  Further, Sleiman objects to the request as overbroad; seeking irrelevant information;  and seeking confidential, trade secrets (i.e. the identities of his clients).

The Court finds the information sought in this request to be relevant to the claims against Sleiman and PSDG.  Plaintiffs allege implied contract, quasi-contract, and unjust enrichment claims against both Sleiman and PSDG.  The information regarding the flights may be relevant to those claims.  Although Sleiman has stated that he used the jet service for business purposes, Plaintiffs are not required to accept that statement and are free to inquire further into the nature of the flights taken by Sleiman.  Further, the identities of Sleiman's clients or prospective clients are not trade secrets and Sleiman will be required to respond completely to this interrogatory.

### 2.    Interrogatory No. 10

This interrogatory asks Sleiman to identify each time he traveled on a NetJets flight without Jennifer Ward and to include the date, the purpose, and the destination of the flight.  Sleiman again objects that Plaintiffs have flight logs and therefore, do not need the information.  Further, Sleiman objects to the request as overbroad; seeking irrelevant information;  and seeking confidential, trade secrets (i.e. the identities of his

clients).  For the reasons stated above, the Court will require Sleiman to respond to this discovery request.

### 3.    Request No. 10

This request seeks all documents relating to any compensation, including but not limited to, commissions, fees, draw, and bonuses provided to J.Ward by a business in which Sleiman had or have an ownership interest or an affiliation since January 1, 2005. Sleiman objects to the request as being overbroad in time, seeking irrelevant information, and seeking confidential information.  In his response to the motion to compel, Sleiman focuses solely on the time period.  Because the complaint does not claim that Sleiman was the alter ego of J.Ward only during the time period of the contracts between J.Ward and Plaintiffs, the Court does not agree with Sleiman's logic that Plaintiffs may only seek information during that time period.  As it is certainly possible that Sleiman may have been improperly using J.Ward both prior to and after the effective dates of the contracts, the Court finds the stated time period to be reasonable and directs Sleiman to respond to this request as stated.

### 4.    Request No. 15

This request seeks all communications to and from Jennifer Ward relating to PSDG between September 1, 2005 and December 31, 2007.  Sleiman objects to this request as being overbroad, as seeking irrelevant information (insofar as the communications do not relate to Plaintiffs), and as seeking confidential information. Plaintiffs respond that Ward testified she was President of PSDG, however did not receive any direct compensation for the services she provided as President of PSDG.

Instead, she claimed PSDG paid J.Ward commissions and consulting fees for her services. However, PSDG and Sleiman have elsewhere testified that Ms. Ward was an employee of PSDG. Plaintiffs believe the written communications of Ms. Ward relating to PSDG will lead to the discovery of admissible evidence regarding her employment with PSDG, her improper use of J.Ward for the benefit of PSDG, and Sleiman's domination and control of J.Ward through his relationship with Ms. Ward. The Court believes the discovery of this correspondence may indeed lead to the discovery of admissible evidence and the time period is reasonable. Moreover, as Sleiman has failed to satisfy his burden of showing the evidence should not be discoverable, the Court will require Sleiman to respond to this request.

**5.     Request No. 17**

This request seeks all documents relating to Jennifer Ward's involvement with any business in which Sleiman had or has an ownership interest or an affiliation since January 1, 2005. Sleiman objects to this request as being overbroad, seeking irrelevant information, and seeking confidential information. Further Sleiman objects to the term "involvement with" as being vague. Plaintiffs respond that through discovery, they have learned that numerous business entities either owned by Sleiman or with which Sleiman was affiliated have provided funds to J.Ward. Plaintiffs contend the requested documents will show whether, contrary to her sworn testimony, Ms. Ward was working for other companies affiliated with Sleiman or whether Sleiman was just transferring money to Ms. Ward.

The Court again finds the documents requested are relevant. Additionally, the Court does not agree with Sleiman's contention that the term "involvement with" is vague. Sleiman should produce any records, if they exist, showing any services provided by or to Ms. Ward. Finally, Sleiman has again failed to show any other reasons why this discovery should not be required and therefore, Sleiman is ordered to respond to this request.

Accordingly, after due consideration, it is

**ORDERED**:

Plaintiffs' Motions to Compel (Docs. 97 and 98) directed to Defendants, PSDG and Sleiman are **GRANTED in part and DENIED in part** as provided in the body of this Order. PSDG and Sleiman shall provide their responses to the discovery requests no later than **Friday, January 13, 2012**.[4]

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this _27th_ day of December, 2011.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

---

[4] In their Motions, Plaintiffs ask for sanctions against Defendants PSDG and Sleiman. While the Court is concerned that both Defendants have been extremely reluctant to participate in discovery, the Court found that some of the discovery requests were inappropriate and that Defendants had some reasonable grounds for their objections. However, the Court will caution counsel for Defendants that if they or their clients engage in any further conduct that could be viewed as obstructive, the Court will not hesitate to impose sanctions on the attorney or party so doing.

Copies to:

Counsel of Record