UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NETJETS AVIATION, INC. and NETJETS
SALES, INC.,

    Plaintiffs,

vs.                                                            Case No. 3:10-cv-483-J-32MCR

PETER SLEIMAN DEVELOPMENT GROUP,
LLC, PETER SLEIMAN, and JENNIFER
WARD,

    Defendants.
_____/

## **O R D E R**

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Sanctions (Doc. 118) and Motion to Compel (Doc. 119) filed May 4, 2012 as well as Defendants' Amended Motion to Compel and for Sanctions (Doc. 123) filed May 14, 2012. Defendants filed responses in opposition to Plaintiffs' motions on May 20 and 25, 2012 (Docs. 128 and 130) and Plaintiffs filed a response in opposition to Defendants' motion on May 31, 2012 (Doc. 131). Accordingly, these matters are now ripe for judicial review.

### **I. BACKGROUND**

The instant litigation stems from contracts entered into between Plaintiffs and a Florida corporation, J Ward. When J Ward breached the contracts by failing to pay monies owed, Plaintiffs sued J Ward in Ohio state court and obtained a judgment against it. Plaintiffs were unable to collect on the judgment and subsequently brought the instant litigation initially alleging claims for corporate alter ego liability for breach of

-1-

contract and breach of contract implied-in-fact against Defendant, Peter Sleiman Development Group ("PSDG") related to the purchase and lease of fractional ownership interests in jet aircrafts by J Ward, Inc. (Doc. 32). Plaintiffs also alleged claims of quasi-contract and unjust enrichment against PSDG, Peter Sleiman ("Sleiman"), and Jennifer Ward ("Ward") for private jet travel and related services provided to and received by Defendants. Id. Plaintiffs subsequently amended the complaint to include claims for alter ego liability against Sleiman and Ward related to J Ward's purchase and lease of the fractional ownership interests in the aircraft. (Doc. 63).

Discovery in this case has been extremely contentious. The instant motions are simply the latest examples of what has become a pattern. It appears neither side is particularly interested in resolving any dispute without Court intervention. The undersigned certainly hopes this pattern will change.

## II. ANALYSIS

The Court will first address Plaintiff's Motion to Compel (Doc. 119) and then will address the parties' motions for sanctions[1] (Docs. 118 and 123).

**A.** **Plaintiff's Motion to Compel (Doc. 119)**

Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. See Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984). The trial court's exercise of discretion regarding discovery orders

---

[1] Although Defendants' motion is titled a motion to compel and for sanctions, it is in reality, simply a motion for sanctions.

-2-

will be sustained absent a finding of abuse of that discretion to the prejudice of a party. See Westrope, 730 F.2d at 731.

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore, embody a fair and just result. See United States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983 (1958). Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion requiring judicial intervention. Furthermore, "[d]iscovery in this district should be practiced with a spirit of cooperation and civility." Middle District Discovery (2001) at 1.

In the instant matter, Plaintiffs contend both PSDG and Sleiman have failed to properly respond to numerous discovery requests. The Court will first address the requests directed to Sleiman individually and will then turn to the requests directed to PSDG.

### 1. **Discovery Requests Directed to Sleiman**

In their Motion, Plaintiffs claim Sleiman failed to properly respond to five different discovery requests. The Court will address each of these requests.

#### a. **Interrogatory No. 2**

This request seeks information regarding all businesses Sleiman had an ownership interest in at any time since January 1, 2005. It is not clear why Sleiman objected to this interrogatory as both sides simply quote the response which states that Sleiman does not waive previously asserted objections. Sleiman went on to provide

information regarding businesses in which he had an interest since he left Sleiman Enterprises in November 2005. Sleiman does not provide any explanation as to why he failed to provide the information regarding businesses in which he had an ownership interest since January 1, 2005 and as the Court believes Plaintiffs have shown such information relevant, Sleiman is directed to supplement his response to this interrogatory.

### b. Interrogatory No. 4

This interrogatory seeks information regarding all real estate in which Sleiman had an ownership interest since January 1, 2005 from which Jennifer Ward or J Ward received any form of compensation. Sleiman's response simply references his response to Interrogatory No. 2. Again, Sleiman has failed to identify any reason for an objection to this interrogatory other than to state that he has provided responsive documents. The Court does not agree that such is sufficient and therefore, directs Sleiman to file a revised response to this interrogatory which provides a complete response. If Sleiman intends to utilize documents to respond to this request, he shall identify all responsive documents by their Bates numbers.

### c. Interrogatories Nos. 14 and 15

These interrogatories ask Sleiman to identify all financial institutions where he has had checking, savings, investment, or any other financial account at any time from January 1, 2005 to December 31, 2007, including the account numbers and the dates the accounts were opened and closed. It appears Sleiman objects to these requests as seeking an overly broad range of personal financial information irrespective of any

relationship to J Ward.  Plaintiffs argue the information in these interrogatories is relevant because the records produced thus far show millions of dollars being withdrawn from J Ward accounts through "unidentified internal bank transfers, wire transfers, and miscellaneous debits." (Doc. 119, p.11).  They believe the information sought through these interrogatories will show Sleiman was the recipient of at least some of these transactions.

Sleiman believes there is a less intrusive way for Plaintiffs to obtain the information they are seeking.  Namely, Sleiman proposes Plaintiffs identify the specific transactions they are seeking information about and "the parties could then pursue records related to those particular transactions as opposed to years of Mr. Sleiman's personal banking records . . ." (Doc. 128, p.11).  While that may be a persuasive argument if Plaintiffs were seeking all of Sleiman's account statements, these two interrogatories simply ask Sleiman to identify the account numbers and dates the accounts were opened and closed.  The Court believes this information is relevant, would not be unduly burdensome for Sleiman to produce, and is not overly intrusive.  Accordingly, Sleiman is directed to file revised responses to these interrogatories.

### d. Interrogatory No. 21

This interrogatory seeks the monthly and year-end account statements from any financial institution in which Sleiman had an interest since January 1, 2005 and which received funds from or transferred funds to Jennifer Ward or J Ward.  Sleiman objects to this interrogatory as being harassing and overly broad.  As noted above, counsel for Sleiman proposes that rather than seeking the account statements, Plaintiff should

"identify the specific transactions they claim involved Mr. Sleiman, if any, and the parties could then pursue records related to those particular transactions as opposed to years of Mr. Sleiman's personal banking records (which would obviously include countless irrelevant transactions)." (Doc. 128, p.11). Moreover, Sleiman states:

> The Plaintiffs['] approach is to seek the production of a potentially large amount of information (i.e., two years of all of his banking and investment records) for the stated goal of hopefully identifying information related to a finite number of transactions Plaintiffs have the ability to identify. The approach is unduly harassing and not the optimal method to obtain what Plaintiffs seek to obtain. For example, if the Plaintiffs have identified a withdrawal from a J Ward bank account in the amount of $1,000, for which Plaintiffs suggest the "ultimate beneficiary" is unidentified, it would make the most sense for Plaintiffs to identify the transaction and serve discovery tailored at the particular transaction or even depose the Defendants regarding same.

(Doc. 128, p.12).

The Court agrees that the time frame for this interrogatory is too broad. Plaintiffs seek account statements from January 1, 2005 to the present. Plaintiffs have provided no information to support such a broad request. The relevant period appears to be from January 1, 2005 through December 31, 2007. As for Sleiman's suggestion that Plaintiffs identify the particular transaction and then seek information regarding it rather than all of Sleiman's account information, the Court finds some appeal in it. However, the Court is concerned that based on the apparent inability of counsel to cooperate in discovery, as demonstrated by the sheer number of motions to compel and motions for sanctions filed as well as the vitriolic and frankly, unprofessional, language used in some of these motions, it will simply be inviting another motion to compel. Despite this

concern, the Court will direct counsel for Plaintiffs to identify the dates of the particular transactions about which it seeks information. Sleiman shall, within fourteen days of receiving this information from Plaintiffs' counsel, provide any account statements covering the particular dates. If an account only provides a yearly statement, Sleiman shall provide the yearly statement(s) for the specific dates provided by Plaintiffs. In lieu of this, Sleiman is free to respond to the interrogatory as presently worded, with the above-mentioned alteration of the time period, from January 1, 2005 to December 31, 2007.

### 2. Discovery Requests Directed to PSDG

Plaintiffs claim PSDG failed to properly respond to five requests for production of documents. The Court will address each of these requests.

#### a. Request for Production No. 1

In this request, Plaintiffs seek all periodic financial statements for PSDG since January 1, 2005. Plaintiffs argue this information is relevant because Ward testified PSDG compensated her for her role as President of PSDG, however, "PSDG has admitted no compensation has been given to J Ward and that PSDG has no employment records showing compensation paid to Jennifer Ward." (Doc. 119, p.15). Additionally, Plaintiffs note that PSDG "has admitted it has no contractual relationships with any brokers or real estate agents, nor has it made any payments to real estate agents or brokers since January 1, 2005." Id. The Plaintiffs simply conclude that the financial statements will help show that PSDG, Sleiman, and Ward improperly used J

Ward for their personal benefit. The Court fails to see the connection and therefore, questions the relevance of the financial statements

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Courts construe relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385 (1947)). Relevant information is discoverable even if it is not admissible at trial, "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Fed.R.Civ.P. The Federal Rules of Civil Procedure strongly favor full discovery whenever possible. Moore v. Armour Pharmaceutical Co., 927 F.2d 1194, 1197 (11th Cir. 1991).

"Thus, although the undersigned is aware that the threshold for determining whether discovery is relevant is relatively low, the 'proponent of a motion to compel discovery [still] bears the initial burden of proving that the information sought is relevant.'" Diamond State Ins. Co. v. His House, Inc., No. 10-20039-CIV, 2011 WL 146837, *5 (S.D. Fla. Jan. 18, 2011) (quoting Peacock v. Merrill, No CA 05-0377-BH-C, 2008 WL 176375, *8 (S.D. Ala. Jan.17, 2008)). Here, Plaintiffs have not met that burden with respect to this request. Plaintiffs have simply failed to show how the financial statements of PSDG for over seven years will lead to the discovery of

admissible evidence in this case. Accordingly, the Court will deny Plaintiffs' Motion to Compel with respect to Request No. 1.

### b. Requests for Production Nos. 6, 7, and 8

These requests seek: 1) the monthly and year-end statements from any financial institution where PSDG had an account from January 1, 2005, which transferred money to and/or received funds from Ward or J Ward; 2) all canceled checks from any of PSDG's accounts since January 1, 2005 that relate to or were for the benefit of Ward or J Ward; and 3) all documents relating to any wire transfers from any of PSDG's accounts since January 1, 2005 that relate to or were for the benefit of Ward or J Ward. PSDG responds to each of these requests by asking Plaintiffs to identify the particular transactions, checks, or wire transfers about which they are concerned. Plaintiffs respond to Defendants' suggestion by arguing that they should not be required to only seek information related to records they already have and "assume that no other transactions exist." (Doc. 119, p.16). Plaintiffs also point out that they learned Sleiman had companies in which he had an ownership interest make payments to a third party vendor (Ward's interior designer) and reconciled those payments as compensation paid to J Ward. PSDG does not respond to this assertion by Plaintiffs.

Based on this assertion, the Court believes the information sought by Plaintiffs is relevant and PSDG should be required to respond to the requests, with the exception that it need only produce responsive documents from January 1, 2005 to December 31, 2007.

### c. Request for Production No. 12

This request seeks PSDG's federal, state, and local income tax returns for 2005 through 2008. Plaintiffs argue this information is relevant because Ward was responsible for commercial leasing, land acquisitions, marketing, sales, development, and management for PSDG; yet neither J Ward nor any other real estate broker received compensation since January 1, 2005. Plaintiffs believe the four years of income tax returns will lead to information showing that PSDG improperly used J Ward as a scheme to benefit Sleiman and Ward. Once again, the Court is not convinced Plaintiffs have shown that the requested tax returns are relevant. Plaintiffs have simply not made the connection between the lack of compensation to Ward and PSDG improperly using J Ward as a method to benefit Sleiman and Ward. As such, the Court will deny Plaintiffs' Motion to Compel insofar as it relates to this request.[2]

### B. The Parties' Motions for Sanctions (Docs. 118 and 123)

On May 4, 2012, Plaintiffs filed a motion for sanctions against Sleiman and PSDG (Doc. 118). Defendants, Sleiman and PSDG, filed their own motion for sanctions on May 14, 2012 (Doc. 123). Plaintiffs' motion seeks sanctions "based upon Defendants' deceptive behavior throughout the discovery process and blatant abuse of the judicial process." (Doc. 118, p.1). Plaintiffs argue Defendants refused to properly respond to their discovery requests, causing Plaintiffs to have to file motions to compel. Plaintiffs point out Defendants objected to some of their requests on the basis that it

---

[2] Plaintiffs request sanctions for having to file the Motion to compel. The undersigned does not believe sanctions are appropriate in this instance and therefore, will not award them.

would be harmful to Defendants to produce responsive documents, clearly implying responsive documents existed. Additionally, Plaintiffs note counsel for Defendants sought an extension of time in which to respond to the discovery requests, taking the position that he needed additional time to address the voluminous amount of documents. However, when Defendants actually responded to the discovery requests, they produced a paltry 32 pages of documents and responded to most of the requests with one word: "none." Plaintiffs go on to call Sleiman and Ward "liars who simply do not believe the rule apply to them." (Doc. 118, p.6).

Defendants responded to this motion and counsel explained he was surprised by the Motion for Sanctions. Counsel asserted he had not been aware of counsel for Plaintiffs' concern with the discovery responses as no one attempted to confer with him prior to filing the motion. Counsel for Defendants further explained he was required to consider a voluminous amount of information in order to identify whether responsive documents existed. The fact that out of all of those documents, only a few or "none" were responsive does not necessarily mean he or his clients lied.

The Court agrees with Defendant and does not believe sanctions are warranted at this time. The Court directs counsel for both sides to refrain from filing any additional motions for sanctions. At the conclusion of this matter, the Court will be in a better position to consider the issue of sanctions and therefore, directs both sides to wait until that time to seek sanctions.

As for Defendants' motion for sanctions, Defendants ask the court to impose sanctions on Plaintiffs "for their serious discovery abuse." (Doc. 123, p.2). Defendants

argue Plaintiffs produced over fifty pages of documents that had been "altered." In fact, Plaintiffs produced several documents that had been redacted. While the Court agrees with Defendants that it is peculiar for documents, which do not appear to contain confidential or sensitive information, to be redacted; the Court sees no harm in Plaintiffs' conduct. It is clear Plaintiffs eventually produced unredacted versions of the documents as Defendants attach same to the instant Motion. Although Defendants vaguely contend there may be more documents that have been redacted, Defendants have done nothing more than speculate. Indeed, Plaintiffs assert they have provided Defendants with unredacted copies of all of the documents.

Additionally, Defendants contend they were prejudiced by Plaintiffs' conduct in that they were not able to question Plaintiffs' corporate representative about the redacted documents. However, the only specific example provided by Defendants was that they questioned Mr. Shedlock regarding a communication on June 7, 2007, however, because counsel for Defendants did not have the redacted portion of Document A, he could not ask Mr. Shedlock about it. Plaintiffs respond that Defendants will still have two more opportunities to question Mr. Shedlock, as he will be the corporate representative for NetJets Aviation, Inc. and will also be available to be deposed as a fact witness. As such, the Court does not believe Defendants have been prejudiced by the failure of Plaintiffs to produce unredacted copies at an earlier time.

Finally, Defendants mention an inappropriate privilege log and argue that it was untimely, however, Defendants have not asked the Court to do anything with respect to it. Plaintiffs respond that the privilege log was not untimely as they produced it at the

same time they provided all of the unredacted documents. In any event, the Court does not believe, based on the circumstances of this case, that it would be appropriate to find Plaintiffs waived the attorney-client privilege.

In closing, the Court will again express its concern that counsel for both parties appear unwilling or unable to practice discovery with the "spirit of cooperation and civility" expected of counsel in this district. The Court is aware that Plaintiffs believe another motion to compel will be necessary with respect to discovery served on Jennifer Ward. The Court urges counsel for both sides to confer and to make every effort to resolve their disputes without further Court intervention. Counsel are hereby notified that the Court will sanction any party or their attorney who takes an unreasonable or unsupportable position with respect to this discovery.

Accordingly, after due consideration, it is

**ORDERED**:

1. Plaintiffs' Motion to Compel (Doc. 119) is **GRANTED in part and DENIED in part** as provided in the body of this Order. Defendants shall provide their amended responses to the discovery requests no later than **Friday, June 29, 2012**.[3]

2. Plaintiffs' Motion for Sanctions (Doc. 118) is **DENIED**.

3. Defendants' Amended Motion to Compel and for Sanctions (Doc. 123) is **DENIED**.

---

[3] This deadline obviously does not apply to Sleiman's response to Interrogatory No. 21. His response to this interrogatory is due fourteen days after receipt of the dates from Plaintiffs.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  20th  day of June, 2012.

*[signature]*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record